Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| | Case No. |
| THOMAS JAURIGUE, | **COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN** |
| Plaintiff, | |
| v. | |
| AETNA LIFE INSURANCE COMPANY; THERMO FLUIDS, INC. and THERMO FLUIDS, INC. LONG TERM DISABILITY PLAN, | |
| Defendants. | |

Now comes the Plaintiff, Thomas Jaurigue (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, Aetna Life Insurance Company, Thermo Fluids, Inc. and Thermo Fluids, Inc. Long Term Disability Plan, he states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.      Upon information and belief, Thermo Fluids, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy (hereinafter referred to as the "Policy") which was issued and fully insured by Aetna Life Insurance Company (hereinafter referred to as "AETNA").  The specific group disability policy is known as Group Policy No.: GP-604471-GI. The Company's purpose in sponsoring the Policy was to provide disability insurance for its employees, including Plaintiff.

4.      Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Thermo Fluids, Inc. Welfare Plan (hereinafter referred to as the "Plan"), which may have been created to provide the Company's employees with welfare benefits.

5.      At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

6.      Upon information and belief, AETNA functioned as the claim administrator of the Policy.

7.      AETNA operated under a financial conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled and entitled to benefits, as well as the payor of benefits if it concluded Plaintiff was disabled.

8.      AETNA's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of his disability benefits.

9.      If AETNA concluded that Plaintiff was not disabled and entitled to benefits, it directly benefited by saving money that it otherwise would have had to pay Plaintiff had it concluded he was disabled.

10.     The Company, AETNA, and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

11.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

12.     Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits he may be entitled to from the Plan, any other Company Plan and/or the Company as a result of being found disabled in this action.

13.     After working for the Company as a loyal employee in the position of a Truck Driver, Plaintiff became disabled from working in any occupation on or about November 15, 2013, and remained continuously disabled from working in any occupation through on or about August 14, 2016 (i.e. the date Plaintiff returned to work), due to his serious and disabling medical conditions.

14.     Following the onset of his disability, Plaintiff filed a claim for long-term disability benefits under the relevant Policy which was administered by AETNA.

15.     AETNA made every decision in Plaintiff's claim regarding whether Plaintiff was disabled pursuant to the Policy's definition of disability and entitled to long-term disability benefits.

16.     Upon information and belief, the relevant AETNA Policy and definitions of disability governing Plaintiff's long-term disability claim are as follows:

"Test of Disability: From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:

1.  You cannot perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy-related condition; and
2.  Your earnings are 80% or less of your adjusted pre-disability earnings.

After the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition."

17.     In support of his claim for long-term disability benefits, Plaintiff submitted to AETNA medical evidence which supported his allegation that he met any definition of disability as defined in the relevant Policy.

18.     AETNA approved Plaintiff's long-term disability claim and paid his disability benefits for the 24 month "Own Occupation" period as defined in the Policy, or through February 12, 2016.

19.     Following the "Own Occupation" period, AETNA then conducted a review to determine whether Plaintiff met the "Any Occupation" definition of disability in the LTD Policy.

20.     Following its "Any Occupation" definition of disability review, AETNA erroneously terminated Plaintiff's disability claim and his benefits without any medical documentation to support its allegation that Plaintiff's medical conditions had improved in such a way that he could return to work in any occupation.

21.     In a letter dated September 9, 2015, AETNA informed Plaintiff it was terminating his long-term disability benefits beyond February 12, 2016.

22.    Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed AETNA's September 9, 2015 termination of his benefits and submitted additional medical and vocational evidence supporting his appeal, as well as his allegation that he was disabled and met any and all definitions of disability in the Policy, including the "Any Occupation" definition. This information submitted to AETNA included, but is not limited to, the following:

23.    Plaintiff submitted to AETNA an October 28, 2014 operative report documenting his left knee arthroscopy with partial lateral meniscectomy and chondroplasty. The post-operative diagnoses included degenerative joint disease of both knees right greater than left, chondrocalcinosis and medial meniscus tear of the left knee, and bone marrow edema involving the medial femoral condyle and medial tibial plateau of the left knee.

24.    Further supporting his claim, Plaintiff submitted a November 23, 2015 CT scan of his lumbar spine documenting disc space narrowing at essentially all levels with vacuum disc phenomenon seen at L4-L5, and multilevel endplate Schmorl's nodes. Circumferential disc bulges were also seen at multiple levels, most pronounced at L3-L4 and L4-L5. There were varying degrees of foraminal stenosis, most pronounced at L4-L5 on the left, with mild to moderate multilevel spinal canal stenosis noted.

25.    Plaintiff also submitted to AETNA an April 10, 2015 Capabilities and Limitations Worksheet completed by Plaintiff's physician assistant wherein his physician assistant concluded that Plaintiff had a Class 5 impairment, which is a "severe limitation of functional capacity/incapable of sedentary work."

26.    The Capabilities and Limitations Worksheet completed by Plaintiff's physician assistant was sufficient to document and prove that Plaintiff met the "Any Occupation" definition of disability and was entitled to long-term disability benefits as set forth in the Policy.

27.    Further supporting his claim, Plaintiff submitted a January 8, 2016 questionnaire completed by his treating physician wherein his treating physician disagreed

with AETNA's allegation that Plaintiff could return to work in a sedentary occupation as of February 13, 2016.  Plaintiff's treating physician also opined that Plaintiff's back conditions had not changed since May 2015.

28.     Plaintiff also submitted updated medical records from each of his treating providers and a list of his current medications, all of which documented Plaintiff's inability to work in any occupation or in any work environment.

29.     As part of its review of Plaintiff's claim for long-term disability benefits, AETNA obtained one (1) medical records only "paper review" of Plaintiff's claim from a physician of its choosing, as well as one (1) medical records only "paper review" of Plaintiff's claim from a nurse of its choosing.

30.     AETNA did not disclose to Plaintiff, in either its September 9, 2015 denial letter or its June 3, 2016 denial letter, the names of the medical personnel who reviewed his claim.

31.     AETNA's failure to provide Plaintiff and his treating medical professionals with its reviewing medical professionals' reports before issuing its final denial is not the action of an un-conflicted fiduciary, because it precluded a "full and fair" review pursuant to ERISA.

32.     AETNA's failure to provide its own medical professionals' reports to Plaintiff precluded him from curing any alleged deficiencies that AETNA believed existed in his claim and at a time when it mattered pursuant to Ninth Circuit law, *before* AETNA rendered its final denial.

33.     The deficiencies in Plaintiff's claim that AETNA's alleged existed in its final denial are not inconsequential; AETNA relied on its own medical professionals' opinions and rationales to deny his claim.

34.     AETNA's failure to act as Plaintiff's fiduciary by not providing its medical professionals' reports to Plaintiff during his appeal and at a time when it mattered, *before* it

-6-

rendered a final denial in his claim precluded and denied him the opportunity to perfect and prove his claim pursuant to ERISA and Ninth Circuit case law.

35.    AETNA's failure to provide Plaintiff and his treating medical professionals with the opportunity to respond to its medical professionals' reports is an ERISA procedural violation, and precluded AETNA from providing Plaintiff with a "full and fair" review as required by ERISA.   AETNA's actions also violated Ninth Circuit case law as held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, ***another for the final denial***. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer. The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' ***A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement***" (bold and emphasis added).

36.    Upon information and belief, Plaintiff alleges the reviewing medical personnel may be longtime medical consultants for AETNA and/or the disability insurance industry, and the nurse may be an AETNA employee.   As a result, Plaintiff alleges the reviewing medical personnel may have incentives to protect their own consulting relationships and/or employment with AETNA, and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as what occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies including AETNA, and that allowed the denial of his claim.

37.    In a letter dated June 3, 2016, notwithstanding Plaintiff's aforementioned evidence which proved he met any definition of disability in the Policy including the "Any Occupation" definition, AETNA notified Plaintiff it had denied his appeal and upheld its previous decision to deny his claim for long-term disability benefits.

38.     In its denial letter dated June 3, 2016, AETNA notified Plaintiff he had exhausted his mandatory administrative levels of review and that he could file a civil action in federal court pursuant to ERISA.

39.     AETNA's June 3, 2016 denial letter is clear evidence that it breached the ERISA fiduciary duty it owed to him, that it failed to provide a full and fair review, and committed ERISA procedural violations that were specifically enacted to protect individuals seeking benefits such as the Plaintiff.

40.     In evaluating Plaintiff's claim on appeal, AETNA owed Plaintiff a fiduciary duty and had an obligation pursuant to ERISA to administer this duty, "solely in [his] best interests and other participants" which it failed to do. [1]

41.     AETNA's ERISA violations include, but are not limited to, completely failing to credit, reference, consider, and/or selectively review and de-emphasize most, if not all, of Plaintiff's reliable evidence which proved that he met the definition of disability in the Policy.

42.     Plaintiff asserts AETNA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically 29 U.S.C. § 2560.503-1, by failing to have Plaintiff's claim reviewed by truly independent medical professionals; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination or a Functional Capacity Evaluation when the Policy allowed for one, which raises legitimate questions about the thoroughness and accuracy of AETNA's review and denials; by failing

---

[1] ERISA sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

to credit Plaintiff's reliable evidence; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by him and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all of Plaintiff's medical conditions and the work limitations set forth in his medical evidence as well as the impact the combination of these medical conditions and limitations had on his ability to work in any occupation; and by failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

43.     Plaintiff asserts a reason AETNA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles AETNA undertook as the decision maker and the payor of benefits.

44.     AETNA's structural, financial conflict of interest provided it with a financial incentive to deny Plaintiff's claim.

45.     The standard of review for this Court to apply is *de novo* as the AETNA Policy does not contain discretionary language.

46.     In denying his claim, Plaintiff alleges AETNA failed to provide a full and fair review pursuant to ERISA, and that its denial of his claim is a *de novo* wrong decision.

47.     If the Court concludes the Policy confers discretion and the standard of review is for abuse of discretion, Plaintiff alleges that AETNA's decision, which resulted from its unlawful ERISA violations as referenced herein, was unreasonable and constitutes an abuse of discretion. For the reasons referenced herein, Plaintiff asserts that in denying his claim AETNA did not provide a full and fair review as required by law and its violations of ERISA are so flagrant they justify *de novo* review.

48.     As a direct result of AETNA's decision to deny Plaintiff's disability claim, Plaintiff has been injured and suffered damages in the form of lost long-term disability

benefits, in addition to other potential non-disability employee benefits he may have been entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled.  Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, and life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents.

49.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

50.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding the evidence in Plaintiff's claim is sufficient to prove that he met the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy from November 15, 2013 through August 14, 2016 (i.e. the date Plaintiff returned to work), and that he is entitled to disability benefits, and any other non-disability employee benefits he may be entitled to as a result of that Order, from the date he was first denied these benefits through August 14, 2016 with prejudgment interest thereon;

B.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

C.     For such other and further relief as the Court deems just and proper.

1

DATED this 10th day of May, 2018.

2

3
SCOTT E. DAVIS. P.C.

By:     /s/ Scott E. Davis
4
Scott E. Davis
Attorney for Plaintiff
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26